IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL J. PREZIOSI, | ) |
| Plaintiff, | ) Case No. 2:20-cv-1163 |
| vs. | ) |
| BRIAN MANSBERRY, KELLEY FALCIONE, CHARLES FOWLER and CO JOHNSON, | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

For the reasons that follow, the Court grants Defendants' Motion in Limine to Exclude Evidence and Testimony of Expert Witness (ECF 64).

**I.      Relevant Background**

Plaintiff Daniel J. Preziosi is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") who at all relevant times was housed at the State Correctional Institution at Greene. In this civil rights action brought under 42 U.S.C. § 1983, Preziosi, who is represented by counsel, claims that Defendants failed to protect him from an attack by another inmate in violation of his rights under the Eighth Amendment.

In the Amended Complaint (ECF 32), which is the operative pleading, Preziosi named as Defendants: Corrections Counselor Brian Mansberry; Psychological Services Specialist Kelley Falcione; Corrections Officer ("CO") Charles Fowler; CO Brett Johnson; Michael Zaken, who was SCI Greene's Deputy Superintendent; Security Lieutenant Alan Morris; John Wetzel, who was the Secretary of the DOC; and Trevor Wingard, who was the Deputy Secretary of the Western Region

1

of the DOC. Wetzel, Wingard, Zaken and Morris are collectively referred to as "Supervisory Defendants."

After Defendants answered the Amended Complaint and the parties engaged in discovery, Defendants moved for summary judgment. The Court granted Defendants' motion as to all claims against the Supervisory Defendants and terminated them from this case. The Court denied Defendants' summary judgment motion as to the claims of Eighth Amendment failure to protect against defendants Mansberry, Falcione, Fowler and Johnson (ECF 53, 54) and scheduled trial on those claims.

Pending before the Court is Defendants' motion in limine to exclude evidence and testimony of Preziosi's proposed expert witness, Richard J. Subia. (ECF 64) The motion is fully briefed (ECF 65, 70) and was the subject of oral argument during the pretrial conference on January 17, 2023.

## II.   Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It requires that a witness who qualifies as an expert through knowledge, experience, training, or education may provide expert testimony and opinions so long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) that testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is…a flexible one," directed at the validity, evidentiary relevance and reliability of the proposed submission. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 594-95 (1993). The Third Circuit has explained that under *Daubert*, "district courts perform a gatekeeping function to ensure that expert testimony meets the requirements of Federal Rule of Evidence 702." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017).

"As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591). The "fit" requirement "goes primarily to relevance." *Daubert*, 509 U.S. at 591. While "higher than bare relevance," the standard for assessing the "fit" of an expert's testimony "is not that high." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994). The inquiry in assessing "fit" is "whether an expert's testimony…'will help the trier of fact to understand the evidence or to determine a fact in issue.'" *UGI Sunbury LLC*, 949 F.3d at 835 (quoting Fed. R. Evid. 702(a)).

In his report, Subia states that he intends to offer the following expert opinions at trial:

1. Defendants failed to protect Plaintiff in accordance with policy, procedure, and national standards. This failure was exacerbated by housing him with an inmate known to exhibit serious mental health decompensation which led to the serious assault on Plaintiff on August 21, 2019.

2. Defendants failed to properly house inmate James Smith in accordance with policy after his release from the Psychiatric Observation Cell based on his previous threatening behavior. This failure resulted in the serious and violent assault of Plaintiff on August 21, 2019.

    3. Defendants were deliberately indifferent as it relates to the safety of Plaintiff by allowing inmates to possess uncontrolled padlocks within their facility with full knowledge that they could be used, and had been used, as weapons to severely assault and injure both staff and inmates.

Oral argument was held on Defendants' motion during the pretrial conference. Preziosi's counsel acknowledged that the third opinion expressed by Subia, as set forth above, was relevant only to the potential liability of the Supervisory Defendants. Because those defendants are no longer parties to this case, Preziosi does not oppose Defendants' motion to the extent it seeks to exclude Subia's third opinion. Thus, the Court will grant Defendants' motion as to Subia's third opinion.

As Preziosi's counsel also acknowledged during oral argument, there is no material difference between Subia's first and second opinions. In both, Subia concludes that James Smith, the inmate who assaulted Preziosi, should have been placed in a single cell due to his serious mental health issues.[1] Preziosi's counsel also acknowledged that Subia's conclusions are not relevant to the culpability of either Fowler or Johnson, who are corrections officers and that Subia rendered no expert opinins about their conduct. Counsel clarified that Preziosi is seeking to introduce Subia's testimony to demonstrate liability on the part of Mansberry, who is a Corrections

---

[1] For example, when discussing his first opinion, Subia states in his report that in his "opinion…there was sufficient information to place Mr. Smith on Single cell status upon release from the [Psychiatric Observation Cell]. Mr. Smith was exhibiting aggressive threatening behavior and exhibited clear signs of mental health deficiencies to custody staff, medical staff, and mental health staff. It is this expert's opinion that defendants were derelict in their duties to protect Mr. Preziosi from harm by Mr. Smith who was exhibiting behavior consistent with an individual suffering from a mental health episode. This action and/or inaction by defendants resulted in the brutal assault of Mr. Preziosi on August 21, 2019." (Report at pp. 11-12.) In discussing his second opinion, Subia opines that, based on progress notes pertaining to Smith and statements made by Preziosi during his deposition testimony, unidentified individuals should have ensured that when Smith was released from the Psychiatric Observation Cell on August 1, 2019, he was placed in a "single-celled and an evaluation should have been conducted to determine the appropriateness of double celling." (Report at p. 13.)

Counselor, and Falcione, who was a Psychological Services Specialist during the events at issue in this case.

Defendants' primary objection to Subia's first and second opinions are that they do not represent admissible expert testimony.[2] The Court agrees. First, as Preziosi conceded during oral argument, although Subia makes a passing reference to "national standards" in his first opinion, he does not identify or discuss any national standards in connection with either the first or second opinion. Rather, he identifies and quotes from certain DOC policies. Thus, Preziosi is not offering Subia's proposed testimony in order to inform the jury about any national standards and whether and how, in his opinion, the conduct of Mansberry or Falcione failed to conform to such standards.

Notably, Subia does not critique the DOC's policies, state that they are ambiguous, find them inadequate or otherwise question them. He does not opine that their interpretation requires expert analysis. Rather, he merely identifies certain policies and then states that given the existence of these policies and the facts as he understands them, Smith should have been placed in a single cell (that is, classify him as Z Code status), particularly after his release from the Psychiatric Observation Cell. Simply put, his opinion is that the policies were not followed.

Thus, the fundamental question is as follows: by simply identifying the relevant DOC policies and explaining that Mansberry and Falcione did not act in accordance with those policies, do the opinions expressed by Subia in his report represent admissible expert testimony? The

---

[2] To the extent that Defendants are challenging Subia's opinion on the grounds that it is not based on "scientific knowledge," that argument is rejected. As Preziosi points out, Rule 702 does not limit expert testimony to "scientific" knowledge. Rather, the expert's testimony must relate "to matters requiring scientific, technical *or specialized knowledge*[.]" *Daubert*, 509 U.S. at 591 (emphasis added). "The basis of this specialized knowledge can be practical experience as well as academic training and credentials." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (citation and quotation omitted).

5

answer to that question is "No." Preziosi fails to show why expert testimony is necessary to identify the policies at issue to the jury, or to explain the purpose of such policies. The DOC policies at issue are fact-based. Subia does not analyze or critique them. They are not complex or difficult to understand. The relevant policies can be identified and quoted through lay person testimony. Nor did Preziosi show why expert testimony is necessary to assist the jury in discerning whether Mansberry or Falcione failed to follow the policies Subia discusses, and if so, were deliberately indifferent to Preziosi's civil rights.[3] In fact, given the nature of Subia's anticipated testimony as set forth in his report, his testimony is neither necessary nor helpful; the jury can determine the underlying facts, and based upon those facts can decide whether the policies were violated by Mansberry or Falcione. Regardless of whether they conclude that the policies were not followed, they must still determine if either defendant violated Preziosi's Eighth Amendment rights by failing to protect Preziosi from being assaulted.

In sum, the Court concludes that Subia's expressed opinions would not help the trier of fact to understand the evidence or to determine a fact in issue. In essence, they are not expert opinions at all, but merely a summary of various facts that are fully within the ability of the jury to understand and determine. The anticipated testimony of Subia is neither necessary nor helpful to the jury to detemine whether by not housing Smith in a single cell, Mansberry and/or Falcione were deliberately indifferent to Preziosi's safety. Thus, the Court will also grant Defendants' motion to exclude Subia's first and second opinions.

---

[3] In addition, Subia does not specify how each of the two defendants, who held different positions and had different duties, allegedly engaged in wrongful conduct that violated Preziosi's constitutional rights.

**III.     Order**

Based on the foregoing, it is ORDERED that Defendants' Motion in Limine to Exclude Evidence and Testimony of Expert Witness (ECF 64) is GRANTED.

BY THE COURT:

Dated: January 18, 2023

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge